FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 DEC 19 P 3:41

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Nationstar Mortgage, LLC, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:14-CV-1751 (CMH/TCB) |
| Mujahid Ahmad, | : |
| Defendant. | : |

# COMPLAINT

Plaintiff Nationstar Mortgage, LLC, ("Plaintiff") and, for its Complaint against Defendant, states as follows:

(1)  This is an action by Plaintiff, the nation's fourth largest retail mortgage services provider, for judicial enforcement of Plaintiff's exclusive right to registration and use of the name NATIONSTAR (Plaintiff's Mark) as a service mark for mortgage lending services. The Nationstar name has been used by Plaintiff since March 2006 and is well known to the public by reason of Plaintiff's advertising and promotion, characteristically featured with the following logo:



(2)  In April 2006, Plaintiff made a good faith offer to purchase Defendants two unused domain names, nationstarmortgage.com and nationstarmortgage.net. Defendant

responded by filing an application at the U.S. Patent and Trademark Office (PTO) seeking registration of the identical name, NATIONSTAR, for Plaintiff's exact services, as a means of blocking Plaintiff's effort to register its own name and service mark, and fraudulently alleging an intention to use.

(3)     Defendant has been engaged, and on information and belief, has engaged others in a scheme to block Plaintiff's rights, and to exact payment from Plaintiff in return for an assignment of his domain names and his bogus application. Defendant has demanded $2 million, as set forth in the correspondence from his attorney appended to this Complaint as Exhibit A. The offers from Plaintiff that preceded this demand are appended hereto as Exhibit B. Defendant's conduct violates the Anticybersquatting Consumer Protection Act ("ACPA"), codified at Section 43(d) of the Federal Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(d), and constitutes federal unfair competition, false representation and false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as well as unfair competition and fraud under the common law of the Commonwealth of Virginia.

(4)     Plaintiff opposed Defendant's application at the PTO's Trademark Trial and Appeal Board ("TTAB"), *see Nationstar Mortgage, LLC v. Ahmad,* Opposition No. 91177036. That opposition was tried on the merits and on September 30, 2014, the TTAB opinion determined that Defendant's "averments as to his use of the NATIONSTAR mark for the services identified in the application were fraudulent." Exhibit C.

## THE PARTIES

(5)     Plaintiff is a limited liability company with its principal place of business at 4000 Horizon Way, Irving, Texas 75063.

(6) Defendant is a Virginia resident with his current residence at 2001 North Daniel Street, #102, Arlington, Virginia 22201.

## JURISDICTION AND VENUE

(7) This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to Sections 21(b) and 39 of the Lanham Act, 15 U.S.C. §§ 1071(b) and 1121, and 28 U.S.C. §§ 1331, 1332(a), and 1338(a), in addition to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction over Plaintiff's claims under Virginia law pursuant to 28 U.S.C. § 1367(a).

(8) This Court has personal jurisdiction over the Defendant, a resident of the Commonwealth of Virginia, and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

(9) Plaintiff is a retail mortgage service provider headquartered in Lewisville, Texas. At the time of the events giving rise to this Complaint, Plaintiff had a servicing portfolio of approximately $10 billion. Plaintiff has grown substantially since then.

(10) Plaintiff's pre-sales use of the Nationstar name, beginning on March 31, 2006, included the conduct of customer surveys; revisions to Plaintiff's website; changes in Yellow Pages and other advertising; notification to vendors; communications with insurance companies; modifications to internal voice recognition (IVR) phone routing and caller ID systems; correspondence to credit bureaus; changes to employee recruitment procedures; notifications from the wholesale lending department to over 5,000 active brokers from whom Plaintiff was purchasing loans; and announcement of the name change to banks and other lenders with whom Plaintiff has referral relationships.

(11) On April 11 and 18, 2006, Plaintiff's counsel sent letters to Defendant by overnight mail and email, offering to purchase the NATIONSTARMORTGAGE.COM and NATIONSTARMORTGAGE.NET domain names. Copies of these letters are appended to the Complaint as Exhibit B.

(12) Upon receipt of Plaintiff's offer to purchase his domain names, Defendant filed an application at the PTO, U.S. Service Mark Application Serial No. 78866376 (hereinafter "Defendant's service mark application"), seeking registration of NATIONSTAR for "real estate brokerage; rental of real estate; real estate management services, namely, management of commercial and residential properties; real estate investment; residential and commercial property and insurance brokerage; mortgage brokerage; and business finance procurement services," in International Class 36.

(13) In his service mark application, Defendant alleged that he had used NATIONSTAR as a service mark in commerce since April 4, 2005. That allegation was knowingly and materially false inasmuch as (1) Defendant had never used the Nationstar name for the sale of any goods or services at the time he filed his service mark application (see Ex. C, TTAB Op. at 30), and (2) Defendant filed his service mark application for the exclusive purpose of monetizing his unused domain names, NATIONSTARMORTGAGE.COM and NATIONSTARMORTGAGE.NET, in an effort to block Plaintiff's exclusive right to the registration and use of its own name, and to exact payment from Plaintiff for acquisition of the two domain names and his bogus application.

(14) Defendant has testified that he is a licensed real estate agent but principally employed as a taxi driver. Defendant admitted that his only income from real estate related activity in 2005-2006 was earned in his capacity as a salesperson for a company in Falls Church,

Virginia, named First American Real Estate Inc. Defendant further admitted that he is not a real estate broker, even though the first words in his service mark application are "real estate brokerage."

(15) In a stipulation in the TTAB opposition, Exhibit D, Defendant conceded that he never used the domain names NATIONSTARMORTAGE.COM, NATIONTARMORTAGE.NET, or any other of the dozens of additional domain names, all owned by Defendant, for the bona fide offer or sale of any goods or services, prior to the date of Defendant's service mark application.

(16) In his service mark application, Defendant claimed to have been using the Nationstar name in commerce since April 4, 2005. In support of this claim, Defendant submitted two specimens, the first of which, copy appended hereto as Exhibit E, he described as an "advertising flier".

(17) As a second specimen in support of his service mark application, a copy of which is appended hereto as Exhibit F, Defendant submitted a purported "business card".

(18) In an effort to demonstrate his use of the Nationstar name for the sale of actual services, Defendant introduced three consecutively issued real estate agency licenses from the Virginia Department of Occupational and Professional Regulation (DPOR), each extending for two year terms, expiring September 30, 2006, 2008 and 2010. All of these licenses, however, were issued to Defendant in his capacity as a salesman for First American Real Estate Inc., with no reference to the name "Nationstar." Moreover, Defendant twice extended his real estate license in Virginia as a representative of "First American Real Estate" during the period of time in which he claimed to have been using the Nationstar name. Defendant also registered himself

as a licensed agent of "First American Real Estate Inc." three times in Maryland and the District of Columbia during the relevant period with no reference anywhere to the Nationstar name.

(19) On January 31, 2008, responding to Plaintiff's allegations of fraud, Defendant filed an amendment at the PTO to change the basis of his service mark application from "first use in commerce" to "intent to use." At his TTAB testimony deposition, Defendant was unable to explain the reason for amending his application. On information and belief, the intended purpose of Defendant's January 2008 amendment was to purge the application of Defendant's fraud inhering in the original claim of use in commerce beginning April 4, 2005. However, Defendant revived his fraudulent claim of actual use at his testimony deposition in the TTAB proceeding, insisting that he had been using the mark in commerce since the beginning of 2005. "I was always using the mark," Defendant testified, "and I'm still using it."

(20) Although Defendant's real estate agency licenses were all issued to him as a salesperson of "First American Real Estate Inc." and contain no reference to the name "Nationstar," Defendant testified that these licenses granted him the authority to use "Nationstar" as a trade name for real estate agency and brokerage services, and that it was legally permissible for him to use any name he wanted to in the real estate business regardless of whether it was licensed by any regulatory authority.

(21) Defendant admitted at his testimony deposition that he never filed a fictitious trade name registration for NATIONSTAR.

(22) When presented with copies of his 2005 and 2006 Miscellaneous Income Statements from the Internal Revenue Service documenting payments to Defendant in his individual capacity by First American Real Estate, Defendant admitted that there is no reference to the name "Nationstar" in either of the IRS Statements. Notwithstanding, Defendant claimed

6

that each of the residential real estate sales documented in his 2005 and 2006 IRS statements evidenced his use of the "Nationstar" name, despite the absence of the Nationstar name in either of the IRS documents.

(23) At his testimony deposition, Defendant was questioned about his creation of a Virginia corporation, "Nationstar Mortgage, Inc." on May 19, 2006, one month after filing his service mark application. In response, Defendant admitted that the corporation had never been authorized to engage in real estate agency services in the Commonwealth of Virginia or any other jurisdiction. The corporation was licensed to engage in mortgage brokerage services, but not until October 24, 2006, more than six months after the April 2006 filing date of Defendant's service mark application.

(24) Defendant admitted in his testimony deposition that his Virginia corporation, "Nationstar Mortgage, Inc., " never had any revenue, never earned any income, never filed a federal or state tax return, and never did any business.

(25) In a report dated May 12, 2010, the Business Tax Division of the Commissioner of Revenue for Arlington, County, Virginia, stated that Defendant had "not registered the trade name NationStar or Nation Star. . . [and that] there is no business tax registration for this individual."

(26) Defendant admitted at his testimony deposition that all of the income he claimed to have earned using the Nationstar name was reflected in the 2005 and 2006 IRS statements, even though those statements document payments to him in his individual capacity by First American Real Estate.

(27) Defendant admitted at his testimony deposition that he has no knowledge of rendering an invoice for any services using the name "Nationstar."

(28) Defendant further admitted "there is no business" when asked about filing an annual report for "Nationstar Mortgage, Inc." with the Virginia Corporation Commission.

(29) Referring to the "business card" submitted as a specimen of his claimed use beginning in 2005, copy appended to this Complaint as Exhibit F, Defendant testified that "[s]ome of them were created by me" and "some of them were created by the place where they're printed from." Defendant was unable to state who created the business card evidence that he submitted, or where or when it was created.

(30) Defendant admitted that at his testimony deposition that the cell phone number on his "Nationstar Mortgage" business card was his personal cell phone and that the monthly telephone bill on that account made no reference to the name "Nationstar." He further admitted that the office number appearing on this "business card" was an old home telephone number no longer in service, even though he continued to use the card.

(31) Defendant admitted that "Nationstar Mortgage, Inc.," never had a bank account or rendered a payment of any kind, and that he has no knowledge of any ordinary business records.

(32) Defendant was unable to state when, where, or by whom the two "postcards" depicting the Nationstar name allegedly distributed by Defendant in 2005 to his current and prospective clients, were created, Exhibit G.

(33) Defendant called two witnesses to corroborate his claim to use of the Nationstar name going back to 2005, each of whom had utilized Defendant's services as a licensed representative of First American Real Estate. The first was Abid Hussain, who recounted the purchase of his residence on March 24, 2005. The sale is documented in a HUD-1 statement, which contains no reference to the name "Nationstar." Defendant's counsel, however, handed a business card to Hussain bearing Defendant's alleged "Nationstar" mark, and Hussain testified

that he remembered receiving it. Hussain also said that he knew of Defendant's "Nationstar" company as early as January 2005, even though that company was not created until May 19, 2006. On cross examination, however, Hussain conceded that he had never paid any money to Defendant for any service.

(34) Hussain also testified that he had kept at home – for five years - a copy of Defendant's 2005 advertising flier (Exhibit E), as well as the October 2005 letter that he received from Defendant on "Nationstar" letterhead addressed to "Dear Sir/Madam" (Exhibit H). At first he testified that he remembered receiving the letter in 2005. On cross examination, however, he admitted, "I don't remember this letter." He finally admitted that he did not know whether Defendant had a relationship with any company named "Nationstar Mortgage, Inc.," or another company besides First American Real Estate.

(35) Defendant called a second witness named Zulfikhar Sharieff. Sharieff's testimony mirrored that of Hussain but concluded with a disavowal of any relevant knowledge about Defendant's past or present use of the Nationstar name.

## COUNT I

### Cybersquatting

(36) Plaintiff incorporates by reference all of the preceding paragraphs in this Complaint.

(37) To prevail on a cybersquatting claim under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(A), a plaintiff must demonstrate that (1) the defendant had a "bad faith intent to profit" from the plaintiff's mark; and (2) the defendant registered, trafficked in, or used a domain name that "is identical or confusingly similar to, or dilutive of" plaintiff's distinctive mark.

(38)   Defendant to this date maintains a website at www.nationsarmortgage.com appearing as follows:



(39)   Scrolling down from the screen displayed in the preceding paragraph, an Internet user will come to the following self-serving disclaimer at www.nationstarmortgage.com, which neither diminishes the damage wrought upon Plaintiff by Defendant's unlawful conduct nor mitigates against his culpability for such actions:

* Note:

Be Advised, there is another company by the name of **NationStar Mortgage, LLC**. Our Company is a Corporation. Their company is an "LLC". Their website is www.nationstarmtg.com Please, click at the link **above** to go to their Website.

(40)    As illustrated in Exhibit A to this Complaint, Defendant has demanded $2 million from Plaintiff in return for his assignment of his domain names along with his bogus service mark application.

(41)    By his acts aforesaid, Defendant has engaged, and is engaged, in a violation of ACPA, 15 U.S.C. § 1125(d).

WHEREFORE, Plaintiff demands judgment against Defendant as set forth in the Prayer for Relief below, including attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), in addition to statutory damages in the amount of $100,000 per cybersquatting domain name pursuant to Section 35(d) of the Act, 15 U.S.C. § 1117(d), in addition to permanent injunctive relief.

## COUNT II

### Federal Unfair Competition, Misrepresentation and False Designation of Origin

(42)    Plaintiff incorporates by reference all of the preceding paragraphs in this Complaint.

(43)    Defendant's bad faith use in commerce of Plaintiff's Mark is likely to cause confusion, mistake, or deception.

(44)    By his acts aforesaid, Defendant has engaged, and is engaged, in federal unfair competition, misrepresentation and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

WHEREFORE, Plaintiff demands judgment against Defendant as set forth in the Prayer for Relief below, including damages, costs and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), in addition to permanent injunctive relief.

## COUNT III

### Virginia Common Law Unfair Competition

(45) Plaintiff incorporates by reference all of the preceding paragraphs in this Complaint.

(46) By his acts aforesaid, Defendant has engaged, and is engaged, in common law unfair competition under the law of the Commonwealth of Virginia.

WHEREFORE, Plaintiff demands judgment against Defendant as set forth in the Prayer for Relief below.

## COUNT IV

### Fraud

(47) Plaintiff incorporates by reference all of the preceding paragraphs in this Complaint.

(48) Defendant, in the manner described in this Complaint, has knowingly:

- rendered a false misrepresentation in his original application by alleging first use of the opposed mark in April 2005;

- perpetuated that false statement by fabricating documents for use as specimens in support of the opposed application;

- failed to withdraw or repudiate this false evidence at any time during the proceeding despite his subsequent engagement of counsel and amendment to the filing basis of the application, instead perpetuating such fraud by means of renewed assertions throughout his testimony deposition;

- introduced falsified documents as evidence in his testimony deposition on June 9, 2010, namely, business cards, postcards, advertising fliers, and direct mail solicitations; and

- testified falsely at his testimony deposition that these documents were in existence and used by Defendant in 2005.

(49) On information and belief, Defendant fabricated and post-dated his "evidence" of prior use on his home computer to support a false claim that he had used "Nationstar" as a trade

name and service mark prior to his receipt of letters from Plaintiff's counsel dated April 11 and 18, 2006, copies appended hereto collectively as Exhibit B.

(50) Plaintiff, to its detriment, has been required to rely on Defendant's fraudulent representations, and more particularly, to prosecute an opposition against Defendant's service mark application. Plaintiff is now facing irreparable injury, including but not necessarily limited to the depressive effect on the value of Plaintiff's net assets resulting from the delay and uncertainty over its right to registration of the Nationstar name precipitated by Defendant's fraudulent and unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendant as set forth in the Prayer for Relief.

## **Prayer for Relief**

Plaintiff prays for judgment against Defendant as follows:

1. For an order permanently enjoining Defendant and his officers, shareholders, partners, principals, agents, assignees, beneficiaries, successors, licensees, distributors, attorneys, proxies, alter egos, aliases, and all other persons acting in concert with Defendant collectively or individually, from:

    (a) registering or using as a trade name, trademark, service mark, Internet domain name, or portion thereof, any name or term that incorporates, imitates, or is confusingly similar to Plaintiff's Nationstar name;

    (b) purchasing, selling, or using any form of advertising including keywords or "Adwords" in Internet advertising containing any mark that incorporates, initiates, or is confusingly similar to Plaintiff's Nationstar name, and requiring Defendant, when purchasing or selling Internet advertising using keywords, Adwords or the like, to

activate the name NATIONSTAR as a negative keyword or negative Adword in any Internet advertising purchased, sold or used;

(c) infringing Plaintiff's Nationstar name, including all written and spoken terms equivalent or confusingly similar thereto;

(d) using Plaintiff's Nationstar name or any other name or mark that incorporates, imitates, or is reminiscent of or confusingly similar thereto, for any product or service, or in any letterhead, sign, website, advertising or promotion, e-mail or other sales solicitation or business listing, either in print, broadcast, electronic or other form, either separately or compositely with other words;

(e) using Plaintiff's Nationstar name, or any other name or mark confusingly similar thereto, as a corporate and/or trade name and/or fictitious name or portion thereof;

(f) making representations, directly or indirectly, to anyone, anywhere, by any means, including but not limited to unauthorized co-branding, that Defendant is related to, associated or affiliated with, or sponsored, endorsed or approved by Plaintiff;

(g) in any manner depicting, uttering or imitating Plaintiff's Nationstar name for the purpose of misappropriating the trade and goodwill of Plaintiff by association, imitation, fraud, mistake or deception; and

(h) unfairly competing with Plaintiff in any manner.

2. For an order holding that Defendant's acts described in this Complaint constitute a violation of the Anticybersquatting Consumer Protection Act ("ACPA"), Pub. L. No. 106-113, 113 Stat. 1501 (1999), codified at Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); federal unfair competition, misrepresentation and false designation of origin in violation of Section 43(a)

of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition and fraud under the common law of the Commonwealth of Virginia.

3. For an order directing Defendant to file with this Court and serve upon Plaintiff within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with, and will continue to comply with, the injunction and further orders of this Court.

4. For an accounting of profits pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

5. For lost profits and damages in such amount as may appear appropriate following a trial on the merits, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

6. For statutory damages in the amount of $100,000 per domain name, pursuant to 15 U.S.C. § 1125(d)(1)(c).

7. For treble damages pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

8. For costs and attorney fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a).

9. For exemplary damages on Plaintiffs' fraud claim.

10.    For such other and further relief as the Court may deem just and proper.

Dated: December 19, 2014         Respectfully submitted,

**NATIONSTAR MORTGAGE, LLC**

_____
Bassam N. Ibrahim (VA Bar No. 43353)
S. Lloyd Smith (VA Bar No. 85119)
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Tel.  (703) 836-6620
Fax:  (703) 836-2021

*Attorneys for Plaintiff*

## **Exhibits**

| | |
|---|---|
| A | $2 million settlement demand from Defendant dated April 14, 2009 |
| B | Offers Letters from Plaintiff's Counsel Dated April 2006 |
| C | *Nationstar Mortgage, LLC v. Ahmad,* Opposition No. 91177036, September 30, 2014 Opinion, USPTO, Trademark Trial and Appeal Board |
| D | Stipulation Regarding Defendant's Domain Names |
| E | Defendant's "Advertising Flier" |
| F | Defendant's "Business Card" |
| G | Defendant's "Postcards" |
| H | Letters to Defendant's Clients on "Nationstar Mortgage Inc." Letterhead |